

**DEPARTMENT OF THE NAVY**
**NAVAL SCHOOL EXPLOSIVE ORDNANCE DISPOSAL**
**8840 RANGE ROAD**
**NICEVILLE, FLORIDA 32578-8729**

```
                                        1212
                                        Ser CO/018
                                        19 Jan 22
```

MEMORANDUM

From: Commanding Officer, Naval School Explosive Ordnance Disposal
To:   Commanding Officer, Center for EOD and Diving

Subj: COMMAND INVESTIGATION (CI) INTO THE UXO ACCIDENT AT RANGE C-52N ON 10 SEPEMBER 2021

1. NAVSCOLEOD completed a thorough investigation into all events surrounding the UXO accident involving a medical support contractor Mr. Wayne Fabozzi. I have found that he removed UXO from a known impact range placing himself, staff and students at risk. After removal and handling of the UXO, the ordnance item detonated as designed, causing significant injury to himself. Mr Fabozzi had received the required UXO training and signed acknowledgment of that training as a condition of employment. He was not involved in AA&E evolutions and was stationed in the safe area. I find that the UXO accident to be separate from the AA&E training evolutions being conducted that day.

2. While not directly related to the UXO accident, the CI and further investigation provides finding of fact and adds the following.

   a. The training department failed to provide oversight/guidance to Demolition Division leadership on a consistent basis. This lack of oversight in demolition policy and procedures lead to a culture of complacency over time.

   b. On 10 Sep Demolition Division exceeded the DDESB sited range limits (84-S6 DDESB ESS) and the SOP by approximately 1400 lbs Net Explosive Weight. Demolition Division had been experiencing unreliability in blasting cap lots resulting in misfires. The Demolition Division officer authorized his division to tie three 800 lb Net Explosive Weight (NEW) shots together with detonation cord to mitigate the possibility of a misfire. The resulting action of connecting the shot together with detonation cord created a 2400 lb NEW detonation on a 1000 lb NEW range. The fragmentation distance did not increase because the 800 lb build-ups were separated by distance. However, the blast radius was significantly extended past range limitations.

   c. Explosive operations at range 52N are not being tamped. The AF Form 943 associated with AFSC-Eglin-84-S6 reflects that explosives will be tamped with an earth overburden. The initial DDESB siting was approved based on the documents submitted. I have found no evidence that would suggest tamped demolition operations have ever taken place on range 52 N.

COMMAND INVESTIGATION (CI) INTO THE UXO ACCIDENT AT RANGE
C-52N ON 10 SEPEMBER 2021

    d. The Demolition Division Standard Operating Procedures (SOP) is signed by the NAVSCOLEOD Commanding Officer vice the Installation Commander without delegation of authority. NOSSA 8023.11D pg 4, 7.a-b pg 5, 9.a

    e. There were multiple working copies of the Demolition Division SOPs that were not serialized and maintained as required by the SOP. The copies were inconsistent in content and did not support seamless demolition operations.

    f. The DEMO SOP lacked clarity in its intent for required safety briefings. Medical response personnel were not included in the daily hazardous control brief as they are not considered part of an AA&E operation.

    g. Mr. Fabozzi showed the UXO to a NAVSCOLEOD instructor, who instructed him to put it down. The instructor violated the SOP as it is written as he did not stop training and call for a Training Time Out (TTO). However, when the UXO was presented the instructor was in the process of getting students into the OCB. The time fuse had already been initiated on the down range detonation. In this instance a TTO is not an executable course of action.

    h. Process Supervisors Statements were not signed and up-to-date.

    i. The Training Safety Officer (TSO) duties were being performed as a division collateral duty without command oversight. Divisional TSO's had a lack of consistency in their procedures and quality assurance checks across high risk training.

3. I have made the following immediate corrective actions:

    a. Conducted Command safety stand-down focused on UXO policy and procedures.

    b. I have relieved the Demolition Division OIC (Army O-3) and assigned him in a Non-leadership instructor position in a low-risk division not involved in demolition operations.

    c. Directed the new Demolition Division officer to conduct a safety stand-down within his division prior to commencing demo operations.

    d. Formally counseled the division Leading Chief Petty Officer LCPO (Navy E-8) and removed his Range Safety Officer (RSO) qualifications. The LCPO will requalify under the supervision of the Director of Training (DOT).

    e. Formally counseled the RSO of 10 Sep (Army E-7) and removed his RSO qualifications. Service Member will requalify under the supervision of the Director of Training (DOT).

    f. Established a Command Training Safety Assurance Officer (GS-11), as an additional duty for the Command Explosive Safety Officer, which reports directly to the

COMMAND INVESTIGATION (CI) INTO THE UXO ACCIDENT AT RANGE C-52N ON 10 SEPEMBER 2021

    Commanding Officer. All divisional Training Safety Officer's will be aligned under the command TSAO and the Training Safety Administrator for all matters related to Training Safety.

g. Formally counseled the Demolition Division Training Safety Officer (GS-11) and directed that he re-train and qualify under the direct supervision of the Command Training Safety Assurance Officer. (GS-11).

h. Demolition operations have been suspended on range 52N.

i. Requested and received approval from DDESB a re-site of range 52N.

j. Extended UXO clean up contract to sweep range road on 52N down to the OCB that includes a 100m radius around the OCB.

k. Complete review and update of the Demolition SOP that includes concise language that is required for daily briefings.

l. Requested concurrence from Eglin AFB Installation Commander to sign all DEMO SOP's for NAVSCOLEOD.

m. Reviewed all NAVSCOLEOD high risk training SOPs and ensured daily operations aligned to SOP requirements.

n. I am evaluating my TASKORG to ensure my training and training/safety assigned personnel are singularly focused within the scope of their positions.

4. Commanders Observation

My Director of Training (DOT) was in the process of turnover on 10 Sep 2021. The outgoing DOT had been extended at NAVSCOLEOD for over 7 years. Over that period of time the DOT's sphere of influence at the command had expanded outside of the Training Department. This cultural anomaly vastly exceeded his span of control. The outgoing DOT inadvertently began to assume risk in training as he focused his efforts towards command level functions vice the execution of high risk training.

The high risk TSO responsibilities are delegated down to each division at NAVSCOLEOD. Each division assigned their TSO responsibilities to their respective government service employee whose job description included instructor and curriculum management. This course of action created a conflict of interest as the TSO in DEMO was being taxed for time as an instructor, RSO, and curriculum manager. Each division's policy and procedures varied and lacked required command level of oversight.

Medical response personnel are not considered part of an AA&E evolution. If their services are required they will be escorted by an EOD technician. While this is technically correct, I find the

USN-013797

exclusion of the contracted medical team to be inconsistent with High Risk Training evolutions and best practices.

Turnovers were being conducted by personality vice policy and is inconsistent with the standards of NAVSCOLEOD. "This is the way we have always done it" was the consistent theme and over time what right looks like in accordance with policy became lost.

Due to the decades of time lapse I am unable to determine the intent for the range citing on 52N and can only base my assessment on the documentation that is available. The statement to tamp the demo shots does not correlate with any of the project background verbiage used in the initial 1984 request, nor does EAFBI 13-212 Range Planning and Operations stipulate an earth overburden tamp requirement for any of the Eglin ranges. However, I find that NAVSCOLEOD is not in compliance with the documentation as written and while this may be a 37 year administrative oversight in the documentation, Range 52N will remain secured until edits are completed to the Demolition Division SOP following DDESB re-siting approval.

While I possess no statement to confirm, it is my opinion that NAVSCOLEOD DEMO instructors did violate policy in the past by providing Mr. Fabozzi with fragmentation from the range.

5. I find that the UXO accident and demolition procedures on 10 Sep 2021 are separate and distinct events, and the demolition operations that day did not contribute to the injuries of the medical support contractor. However, I do find that we as an organization grossly violated established procedures and fostered a culture of systemic deviation from the norms which in turn became normal operations. I have taken aggressive steps to correct the deficiencies and I am confident NAVSCOLEOD can continue training without interruption.

S. G. BEALL